**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0039n.06
Filed: January 13, 2006

**04-2478**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WENDY McMULLEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| MEIJER, INC., | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before:  DAUGHTREY and COLE, Circuit Judges, and HEYBURN,[*] District Judge.

PER CURIAM.  This case is before us on appeal for the second time, following a remand to the district court to determine whether an invalid arbitrator-selection clause was severable from the remainder of an agreement to arbitrate disputes concerning defendant Meijer's termination of plaintiff Wendy McMullen's employment.  The district court ruled that the offending provision was severable from the remainder of the agreement.  Faced then with an arbitration agreement without a specified method of selecting an arbitrator, the district court concluded that the parties should follow the selection provisions contained in the rules of the American Arbitration Association.  The plaintiff contests both these determinations, maintaining that our invalidation of the arbitrator-selection provision

---

[*]The Hon. John G. Heyburn, II, United States District Judge for the Western District of Kentucky, sitting by designation.

stripped the agreement of such an essential element that the entire agreement to arbitrate disputes must be held to be a nullity. For the reasons set out below, we agree with the district court that the arbitrator-selection provision of the agreement was indeed severable from the remainder of the agreement and that the arbitrator should be selected under the rules of the American Arbitration Association. We therefore affirm the judgment entered below.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this dispute were adequately set forth in our prior opinion in *McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004):

In 1989, Meijer hired McMullen as a store detective at its store in Flint, Michigan. McMullen faced discipline in 1998 for an incident involving her pursuit and confrontation of a juvenile shoplifter in the store parking lot. Meijer offered McMullen a choice between demotion with a 33% decrease in salary, or outright termination. McMullen chose termination and decided to challenge her discipline through Meijer's termination appeal procedure (TAP).

The terms of the TAP establish a two-step procedure requiring binding arbitration of all disputes arising out of termination of employment. The TAP expressly incorporates the Employment Dispute Resolution Rules of the American Arbitration Association (AAA). Further, the TAP specifically asserts that:

This procedure is intended to be the sole and exclusive remedy and forum for all claims arising out of or relating to an eligible team member's termination from employment.

The decision and award of the arbitrator is final and binding between the parties as to all claims arising out of or relating to an [sic] team member's termination from employment which were or could have been raised at any step in this procedure

> and judgment may be entered on the award in any circuit court or other court of competent jurisdiction.
>
> Contemporaneous to hiring McMullen, Meijer had provided her with a copy of an employee handbook describing both the TAP and the company's policy of terminating employees only with "just cause." McMullen had then signed a form acknowledging receipt of the handbook and assenting to the company's policies and procedures.
>
> Upon instituting termination appeal proceedings, McMullen argued that her discharge had been motivated by an intent to discriminate against her on the basis of her gender. Meijer denied her appeal internally and informed her that, "[i]f you would like to contest the results of this further review, you must request an arbitration hearing . . . ." Subsequently, McMullen signed and filed the necessary paperwork to begin the arbitral process.
>
> Once an arbitration hearing is requested, the TAP grants Meijer the right to unilaterally select a pool of at least five potential arbitrators, each of whom must be: (1) an attorney, (2) unemployed by and unaffiliated with the company, (3) generally recognized as a neutral and experienced labor and employment arbitrator, and (4) listed on the rosters of the Federal Mediation and Conciliation Service (FMCS) or the AAA, as well as other arbitration rosters. Then, counsel for the company and the aggrieved employee mutually select an arbitrator from that pool by alternatively [sic] striking names until only one remains. On August 20, 1998, counsel for McMullen and Meijer, following this procedure, selected arbitrator William Daniel to hear McMullen's appeal.
>
> Several months later, and only one day prior to the scheduled date of the arbitration hearing, McMullen filed this declaratory judgment action in state court challenging the fairness of the TAP's arbitrator-selection process. Asserting federal question jurisdiction, Meijer removed the action to the United States District Court for the Eastern District of Michigan.

*Id.* at 487-88.

Ultimately, the district court granted summary judgment to Meijer and issued an

order compelling McMullen to arbitrate her dispute. The plaintiff appealed that ruling to this

court, however, and we undertook to address the central issue in the case at that time –

"whether Meijer's exclusive control over the pool of potential arbitrators renders the arbitral forum so fundamentally unfair as to prevent McMullen from effectively vindicating her statutory rights, thereby precluding enforcement of the pre-dispute agreement to arbitrate the statutory claims." *Id.* at 490. In concluding "that Meijer's TAP is not an effective substitute for a judicial forum," we reasoned that "McMullen's Title VII claims are [thus] not subject to the TAP arbitrator-selection provision." *Id.* at 494. Nevertheless, we remanded the case to the district court to resolve the question "whether Meijer's TAP is thus unenforceable in its entirety or whether the selection procedure can be severed and replaced with an appropriate equitable process." *Id.*

Upon remand, the district judge determined that Meijer's arbitrator-selection procedure could be severed from the remainder of the agreement and that the contract would nevertheless continue to give effect to the parties' intent to utilize arbitration as the exclusive method of resolving disputes arising from an employee's termination from employment. Indeed, according to the district court's oral ruling, "the intent of the parties was always to have arbitration and not judicial resolution of any dispute." Additionally, the district judge noted that "the federal policy favoring arbitration has been preeminent in labor matters" for decades and that "[f]ederal policy overwhelming[ly] supports arbitration of any dispute concerning discharge or employment conditions."

Faced with an arbitration agreement without direction on how to select an arbitrator, the district court then turned to the rules of the American Arbitration Association.

Recognizing Rule 9's description of a selection process to be used "[i]f the parties have not appointed an arbitrator and have not provided any other method of appointment," the court instructed the parties "to choose an arbitrator through the American Arbitration Association."

## DISCUSSION

The arbitration procedure at issue in this litigation is contained in Meijer's policy and procedure manual and consists of 18 sections, some general and aspirational, others detailed and specific. The basic role of arbitration in the dispute resolution process is set out in relevant portions of Sections A and R of the policy, as follows:

A. Purpose and Scope

This procedure has been established to provide an *exclusive*, final and binding method for the company and any eligible team member *to resolve all claims, controversies, disputes or complaints arising out of or relating to the team member's termination from employment*, including any claims or complaints based on federal, state or local law. In the event a team member who is eligible to use this procedure has a complaint about his or her termination from employment, *it will be resolved in accordance with this procedure*.

\* \* \* \* \*

R. Exclusive Remedy, Effect of Arbitration and Condition Precedent

*This procedure is intended to be the sole and exclusive remedy and forum for all claims arising out of or relating to an eligible team member's termination from employment.*

*The decision and award of the arbitrator is final and binding between the parties* as to all claims arising out of or relating to an [sic] team member's termination from employment which

were or could have been raised at any step in this procedure and judgment may be entered on the award in any circuit court or other court of competent jurisdiction.

*In the event a court of competent jurisdiction should determine that this procedure is not the sole and exclusive remedy and forum* and/or that the decision and award of the arbitrator, if any, is not final and binding between the parties as to some or all of the team member's claims, *it is intended that exhaustion of this procedure be a condition precedent to the institution or maintenance of any legal, equitable, administrative, or other formal proceeding* by an eligible team member for all claims arising out of or relating to the team member's termination from employment.

(Emphasis added.)

Additionally, Section H of the policy outlines the process for selecting the person to serve as arbitrator of the employment dispute. That section provides:

Upon receiving a notice of election to arbitrate from the team member, the company will deliver or mail a list of at least five impartial arbitrators to the team member. The arbitrators on the list shall all be attorneys.

Within fourteen (14) calendar days of the date the list was delivered or mailed, the team member or the team member's representative must meet or confer at a mutually convenient place and time with the company's designated representative to choose an arbitrator from the list.

The arbitrator shall be chosen from the arbitrators on the list by alternately striking names, the team member striking first, until only one name remains.

If the arbitrator chosen cannot serve for any reason, the last arbitrator stricken on the list shall be designated to hear the case.

It is this provision of the arbitration agreement that we previously found objectionable and invalidated.

After finding that the arbitrator-selection procedure detailed in Section H of the agreement vested unwarranted control in Meijer, to the exclusion of the company's employees or "team members," we directed the district court to determine whether the offending provision could be severed from the remainder of the policy. Not surprisingly, Meijer contended below that it can and, therefore, that the arbitration proceedings could continue with an arbitrator chosen by another method. McMullen, however, insisted that the invalidated section is not severable, that the entire arbitration agreement is thus null and void, and that she should be allowed to pursue her claims of employment discrimination in federal court without the necessity of resort to arbitration.

Such a dispute presents a question of law that we review de novo. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 674 (6th Cir. 2003) (en banc). In determining whether a provision of a contract or agreement is severable, we first examine the provisions of the applicable state law. *See id.*

The general contract law of Michigan, the state of residence of both plaintiff McMullen and defendant Meijer, provides "that the failure of a distinct part of a contract does not void valid, severable provisions." *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 220 (Mich. Ct. App. 1995) (citing *Robinson v. A.Z. Shmina & Sons Co.*, 293 N.W.2d 661 (Mich. Ct. App. 1980)). In *City of Lansing v. Lansing Township*, 97 N.W.2d 804, 813 (Mich. 1959), the Michigan Supreme Court stated somewhat axiomatically:

> As a general rule, a contract is entire when, by its terms, nature and purpose, it contemplates that each and all of its parts are interdependent and common to one another and to the consideration, and is severable when, in its nature and purpose, it is susceptible of division and apportionment.

"[W]hen determining whether a contractual provision is severable, it is clear that the primary consideration is the intention of the parties." *Samuel D. Begola Servs.*, 534 N.W.2d at 220. No precise rule can be formulated to judge that intent, however. Instead, the intention of the parties "must be discovered in each case by considering the language employed and the subject-matter of the contract." *Stevenson v. Bhds. Mut. Benefit*, 19 N.W.2d 494, 497 (Mich. 1945).

Unlike *Morrison*, this case does not present a straightforward scenario involving an arbitration agreement with an express severability clause. *See Morrison*, 317 F.3d at 675. Both parties to this appeal agree, however, that the absence of such a clause does not necessarily foreshadow a decision that the arbitrator-selection provision was not severable. Although "[t]he selection of an arbitrator is clearly at the heart of any arbitration agreement," *Morrison*, 317 F.3d at 679, even a cursory reading of this particular arbitration agreement reveals the importance that the parties placed upon an arbitral forum for the settlement of employment disputes. As quoted earlier, arbitration was "intended to be the sole and exclusive remedy and forum for all claims"; to the extent that a court determines that it is not, resort to the arbitration process must be considered a condition precedent that must be exhausted prior to seeking judicial intervention. Without a doubt, therefore, the parties

to this arbitration agreement evidenced their intent that the arbitral process was not to be sacrificed for other dispute-resolution alternatives.

In addition to the language and structure of the agreement itself, another important consideration supports the conclusion that the offending provision should be severed and the remainder of the agreement enforced. Throughout the years, courts have emphasized the importance of arbitration in the resolution of disagreements between parties in the employment setting. Indeed, "Supreme Court precedent dictates that we resolve any doubts as to arbitrability 'in favor of arbitration.'" *Id.* at 675 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). In light of this strong preference in favor of arbitration, as well as the parties' expectations that an arbitral forum would be utilized to resolve employment disputes, we decline to prevent use of the chosen method of resolution simply because one, easily-remedied problem surfaces.

After determining that the arbitrator-selection provision of the agreement could be severed, the district judge was faced with the task of determining an alternative means of choosing an arbitrator that would comport with the remainder of the agreement. Although the agreement does not specify an alternative method of selecting an arbitrator, a provision in Section J commits the parties to conduct arbitration "in accordance with the applicable provisions of the Employment Dispute Resolution Rules of the American Arbitration Association," even though it excepts the association from administering the arbitration process because of the arbitrator-selection provision in Section H. Because the rules of

the American Arbitration Association were otherwise adopted for the conduct of any Meijer arbitration, however, the district court concluded that the American Arbitration Association rules governing selection of an arbitrator or arbitration panel should also be followed.  In addition, when, during oral argument, the plaintiff's attorney was given a choice – hypothetically – between utilizing the American Arbitration Association rules or having the district court appoint an arbitrator under the Federal Arbitration Act, 9 U.S.C. § 5, counsel opted for the former over the latter.  In light of these considerations, we see no reason to disturb the district court's decision concerning the proper method of selecting an arbitrator to preside over McMullen's employment dispute.

AFFIRMED.