*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASMIN ADILOVIC,

Plaintiff-Appellant,

v

MONROE, LLC,

Defendant-Appellee.

UNPUBLISHED
July 21, 2022

No. 357342
Kent Circuit Court
LC No. 20-003233-CZ

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In this employment action, plaintiff appeals as of right the trial court order granting defendant's motion for summary disposition. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On May 4, 2020, plaintiff filed a complaint alleging that he was wrongfully terminated from his employment in retaliation for requesting benefits under the Michigan Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. Specifically, plaintiff alleged that he was hired by defendant as an inventory auditor on March 15, 2017. On April 27, 2017, plaintiff claimed that he was working when he placed totes on the ground and straightened up only to experience pain in his back that radiated down to his left leg and into his toes. Plaintiff asserted that he made his claim for worker's compensation benefits on April 27, 2017, "and [in] the days following." Nonetheless, defendant "terminated or otherwise ceased Plaintiff's employment" on May 8, 2017. It was alleged that the termination was in retaliation for making the disability benefits claim. Plaintiff further alleged that he suffered damages "as a result of Defendant's discrimination against him."[1]

---

[1] Plaintiff did not label his claim (i.e., Count I–wrongful termination), but made general statements of "retaliation" and "discrimination." The gist of plaintiff's complaint is that he was wrongfully

Defendant filed a motion for summary disposition under MCR 2.116(C)(7) and (10). According to the dispositive brief, defendant's plastic manufacturing business began operations in Kentwood, Michigan in 1971. On March 15, 2017, it hired plaintiff as an inventory auditor to work the first shift in the molding department. When hired, plaintiff submitted an application and signed a supplement acknowledging the terms and conditions of his employment. This supplement expressly limited any claim or lawsuit to be filed no more than six months after the date of the challenged employment action and further provided that there was a free and knowing waiver of any statute of limitations to the contrary.

According to defendant, the dates pertaining to plaintiff's employment indicated that he signed the supplemental agreement on March 15, 2017, claimed to suffer injury on April 27, 2017, and was terminated on May 8, 2017. Nonetheless, plaintiff did not file his complaint until May 4, 2020, two years and 361 days after his termination. In his requests to admit, plaintiff acknowledged that he signed the supplement and that the document reflects his signature. Although the period governing the underlying cause of action was three years, defendant alleged that plaintiff contractually agreed to a lesser period of limitations of six months. It was also asserted that a shortened statute of limitations will be enforced unless it violates law or public policy. Furthermore, an individual who signed an agreement was deemed to know its contents and could not claim ignorance of the contractual terms. Therefore, defendant submitted that plaintiff could not preclude enforcement of the supplement terms by claiming that he did not read or understand the terms particularly when the supplement unambiguously barred any cause of action beyond six months of the date of accrual. Accordingly, defendant claimed entitlement to summary disposition.

Plaintiff filed a responsive brief in opposition to defendant's motion for summary disposition. Plaintiff alleged that he obtained a four-year degree in electronics, served in the army, and was a police officer while living in Bosnia. Following the war in Bosnia, plaintiff emigrated to Germany and then to the United States where he became a United States citizen. When he applied and interviewed for the job with defendant on March 10, 2017, plaintiff alleged that he advised the human resources director and molding manager that he "did not speak or understand English well." On March 13, 2017, plaintiff was offered the job of inventory auditor at an hourly rate of $13.00. On March 15, 2017, he reported to work and believed that the office manager gave him paperwork to sign. Plaintiff alleged that he advised the office manager that English was not his first language, and he would need help understanding some words in the paperwork. However, she merely wrote inventory auditor on the form and directed him where to sign. Consequently, plaintiff filled out the application to the best of his ability without assistance. He did not understand the terms "waive" or "statute of limitations" but "believed and relied on the Officer Manager's statement that the Application for Employment and Supplement I were paperwork that he had to sign for his employment, and proceeded to sign Supplement I." On April 27, 2017, plaintiff allegedly suffered a work-related injury and made a worker's compensation claim.

terminated from his employment for seeking disability benefits. Plaintiff did not raise a claim addressing fraudulent or innocent misrepresentation or fraud in the inducement.

Defendant informed plaintiff that he was terminated for incidents that occurred between April 27, 2017, and May 8, 2017.

Plaintiff alleged that the waiver of the three-year statute of limitations did not apply because there was a lack of consideration and mutuality of agreement to support it. He claimed that defendant's human resources director was required to aver that defendant provided plaintiff with consideration for the signing of the supplement because the document did not contain the assertion. It was alleged that because plaintiff was hired on the phone two days before he signed the supplement, plaintiff received consideration for the verbal contract but not the supplement, thereby lacking mutuality of obligation. Plaintiff also claimed that the waiver was unenforceable because it was not knowingly and voluntarily executed, citing federal caselaw. Finally, plaintiff claimed there was a factual issue regarding whether the office manager committed fraudulent or innocent misrepresentation by having him sign paperwork without explaining the document, failing to offer a written version in his native Bosnian language, or offering to provide a translator. Plaintiff asserted that summary disposition should be denied.

In its reply brief, defendant asserted that well-established Michigan law applied and plaintiff's reliance on nonbinding federal authority to avoid summary disposition was inappropriate. Defendant submitted the offer of employment and payment of wages was sufficient consideration and mutuality of obligation was unnecessary to enforce a contract. Further, in Michigan, the unambiguous language of a written agreement to shorten the application statute of limitations in employment relationships did not violate law or public policy. The fact that plaintiff failed to read the agreement did not render it invalid or unenforceable; rather, plaintiff had to show fraud or mutual mistake. An individual who signs a contract is presumed to know and understand the terms. Consequently, defendant sought summary disposition of plaintiff's complaint.

After the parties argued their respective positions, the trial court granted defendant's motion. The trial court noted the contract's unambiguous language had to be enforced as written and that private parties had the right to contract for shorter limitations periods than those specified in general statutes absent a traditional defense to the contract or a violation of public policy. The trial court found the six-month period of limitations was enforceable. From this decision, plaintiff appeals.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Under MCR 2.116(C)(7), summary disposition is proper if a claim is barred by the statute of limitations. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 335; 941 NW2d 685 (2019). When examining a motion premised on MCR 2.116(C)(7), all well pleaded allegations are accepted as true and construed in the light most favorable to the nonmoving party. *Id*. at 335-336. Additionally, all documentary evidence submitted by the parties is examined when the motion is brought under MCR 2.116(C)(7). *Id*. at 336.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary

disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

## III. ANALYSIS

Plaintiff contends that the waiver of the statute of limitations was improper because there was a lack of consideration and mutuality of agreement, the waiver was not knowingly, intelligently, and voluntarily made, and defendant committed fraudulent or innocent misrepresentation. We disagree.

"The existence and interpretation of a contract are questions of law reviewed de novo." *Clark v Progressive Ins Co*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (citation omitted). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "The essence of consideration—whatever form it takes—is that there be a bargained-for exchange between the parties." *Calhoun Co v Blue Cross & Blue Shield*, 297 Mich App 1, 13-14; 824 NW2d 202 (2012). Generally, consideration on one side of the contract involves payment of legal tender. *Id*. The enforceability of a contract is contingent on consideration, not mutuality of obligation. *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234, 244; 625 NW2d 101 (2001).[2] A 180-day period of limitations may be enforced even if listed in the employment application because the terms of the employment application become part of the contract of employment. *Id*. An employer provides consideration to an applicant to support enforcement of the employment application terms through the employment and wages. *Id*.

> When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning. *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). If the language of the contract is clear and unambiguous, it must be enforced as written. *Id*. A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation. *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008). Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided. *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). [*McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).]

---

[2] We recognize that our Supreme Court has ordered that oral argument be scheduled in the application pending in *McMillon v City of Kalamazoo*, ___ Mich ___ ; 969 NW2d 10 (2022). The Court directed supplemental briefing to address whether the *Timko* decision "correctly held that limitations clauses in employment applications are part of the binding employment contract" among other potential issues. *Id*.

The bedrock of contract law is that the "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some unusual circumstances, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003).

In *Rory v Continental Ins Co*, 473 Mich 457, 460; 703 NW2d 23 (2005), the trial court refused to enforce the one-year contractual limitations period contained in the insurance policy issued to the plaintiffs by reasoning that the provision was unfair, unreasonable, and an unenforceable adhesion clause. The Court of Appeals affirmed. *Id*. at 463-464. Our Supreme Court reversed, stating:

> A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written. Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract. This Court has previously noted that "the general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.
>
> When a court abrogates unambiguous contractual provisions based on its own independent assessment of "reasonableness," the court undermines the parties' freedom of contract . . . .
>
> Accordingly we hold that an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy. A mere judicial assessment of "reasonableness" is an invalid basis upon which to refuse to enforce contractual provisions. Only recognized traditional contract defenses may be used to avoid the enforcement of the contract provision. [*Id*. at 468-470.]

"Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (citation omitted). "Moreover, mere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Id*. When a plaintiff fails to deny signing a document or assert that the document was signed under duress, an argument precluding enforcement has not been presented. See *id*.[3]

---

[3] We note that plaintiff predominantly cited to federal authority in support of his position. However, decisions from the federal courts are not binding, but their analyses and conclusions may be persuasive. *Abela v GMC*, 469 Mich 603, 607; 677 NW2d 325 (2004). Because the area of contracts law has been developed in Michigan, we applied the caselaw from our courts in rendering our decision.

## A. THE APPLICATION AND SUPPLEMENT

According to the employment application prepared on March 15, 2017, plaintiff successfully wrote out his name, address, and phone number. In response to the question regarding prior convictions or present criminal charges, plaintiff wrote, "NO." He further identified his prior employer and dates of employment. Also on March 15, 2017, plaintiff signed and dated "SUPPLEMENT 1." Underneath the document title, it stated in all-capital letters: "READ CAREFULLY AND SIGN BELOW IF YOU AGREE TO THESE TERMS OF EMPLOYMENT." This supplement contained the following paragraphs:

> I agree that I will not commence any action or lawsuit relating to my employment with the Company, or the termination of my employment, more than 6 months after the the [sic] date of the employment action that is the subject of the claim or lawsuit, and I agree to waive any statute of limitations to the contrary. I understand that this means that even if the law would give me the right to wait a longer time to make a claim, I am freely and knowingly waiving that right, and that any claims not brought within 6 months after the date of the employment action that is the subject of the claim or lawsuit will be barred. I waive any right to a jury trial if I ever sue the Company relating to my employment with the Company. I understand that this means that even if the law would give me the right to have a jury decide my claims, I am freely and knowingly waiving that right and agree to have my claims heard and decided by a judge instead.

> I agree to the above terms of employment. I agree that if any of the above terms is ever found to be legally unenforceable as written, such invalidity will not affect the validity of the rest of this agreement, and such term shall be limited to allow its enforcement as far as legally possible. I agree that no one other than the president of the Company, by a written directive, has any authority to modify the above terms of employment, or to make any exception to them, or to offer employment on any other terms.

> I agree that I will be bound by and will adhere to any other rules and policies issued by the Company, including all rules and policies contained in the Company's employee handbook.

The plain language of the supplement provides that plaintiff waived any contrary statute of limitations and agreed to a 6-month period of limitations "after the the [sic] date of the employment action that is the subject of the claim or lawsuit." The bedrock of contract law is that the "parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some unusual circumstances, such as a contract in violation of law or public policy." *Wilkie*, 469 Mich at 51. If the language of the contract is clear and unambiguous, it must be enforced as written. *McCoig Materials, LLC*, 295 Mich App at 694. Absent a violation of law or public policy, an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written. *Rory*, 473 Mich at 470. Plaintiff failed to identify a violation of law or public policy to excuse enforcement of the six-month period of limitations set forth in the clear and unambiguous language in the supplement he signed.

## B. CONSIDERATION AND MUTUALITY

To avoid application of the 6-month period of limitations, plaintiff submits that he accepted the offer of employment over the phone on March 13, 2017, and signed the supplement on March 15, 2017. Therefore, plaintiff asserts that he was not given any consideration in exchange for the terms of the supplement.

As noted, consideration is essentially a bargained-for exchange between the parties, and consideration by one party generally involves payment of legal tender. *Calhoun Co*, 297 Mich App at 13-14. The enforceability of a contract is contingent on consideration, not mutuality of obligation. *Timko*, 244 Mich App at 244. A 180-day period of limitations may be enforced even if listed in the employment application because the terms of the employment application become part of the contract of employment. *Id*. An employer provides consideration to an applicant to support enforcement of the employment application terms through the employment and wages. *Id*.

In *Timko*, the plaintiff was 79 years old when he began tool and die work for the defendant on August 26, 1996. On August 28, 1996, he signed a three-paragraph employment application which contained a three-paragraph authorization and understanding section. This section provided that the employment relationship was at-will. Additionally, the agreement delineated that the plaintiff's claims had to be brought within 180 days of the event giving rise to his claims or be barred. On February 7, 1997, the plaintiff was purportedly discharged for unsatisfactory performance, and on March 3, 1998, he filed suit alleging age discrimination. The defendant moved for summary disposition, relying on the 180-day period of limitations. *Timko*, 244 Mich App at 236-237. The *Timko* decision was rendered prior to the decision in *Rory*, and this Court concluded that there was nothing unreasonable about the 180-day period because it allowed adequate time for investigation and to file suit. *Id*. at 238-244.

In addition to challenging the reasonableness of the reduction of the period of limitations, the plaintiff also alleged that the defendant could not enforce the reduced time period because it did not have any obligation in the contract. This Court rejected the challenge, stating:

> "The enforceability of a contract depends, however, on consideration and not mutuality of obligation." This Court previously has recognized that the terms of an employment application constituted part of an employee's and employer's contract of employment. Here, [the] defendant clearly provided [the] plaintiff consideration to support enforcement of the terms of the application, specifically employment and wages. [*Id*. at 244 (citations omitted).]

In the present case, plaintiff alleged that he received a phone call offering employment, and he accepted. Accordingly, plaintiff submits there was a lack of consideration for the supplement because there was no additional consideration offered. However, plaintiff's position is contrary to the *Timko* decision which concludes that even terms contained in the employment application become part of the employment contract. As noted, the supplement commenced with the all-capital letter notice that the document had to be signed if plaintiff agreed to the terms of employment. In addition to limiting the period of limitations to file litigation to six months, the agreement also advised plaintiff that he was an at-will employee, that his office, locker, or desk were defendant's property and subject to inspection, that confidential and propriety information

belonged to defendant, and that he was subject to drug screens. Lastly, the supplement provided that plaintiff agreed to be bound by the rules and policies contained in defendant's handbook. Nonetheless, plaintiff alleges that the supplement cannot be enforced because additional consideration was not proffered. However, as noted, the supplement contained the terms of employment. It outlined the responsibilities of plaintiff during the course of his employment. Thus, additional consideration was not required because the supplement delineated the conditions that plaintiff would abide by while he was at work and for which he received his hourly wage. *Timko*, 244 Mich App at 244.

## C. FREELY, KNOWINGLY, AND VOLUNTARILY

Next, plaintiff submits that he did not freely, knowingly, and voluntarily waive the three-year statute of limitations and agree to a six-month period of limitations because he was an immigrant who did not understand the terms of the supplement. Further, plaintiff alleged that he was not given a copy of the supplement in his native language and the terms were not explained to him.

But Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents. *Galea*, 323 Mich App at 369. The failure to read an agreement is not a defense to the enforcement of its terms. *Id*. When a plaintiff fails to deny signing a document or assert that the document was signed under duress, an argument precluding enforcement has not been presented. *Id*. Because plaintiff signed the supplement, it is presumed that he was aware of the contents and the failure to read the document is not a defense. This challenge does not entitle him to appellate relief.[4]

## D. FRAUDULENT OR INNOCENT MISREPRESENTATION

Finally, plaintiff alleged that summary disposition was inappropriate because the office manager committed fraudulent or innocent misrepresentation. However, plaintiff did not raise a claim of fraudulent or innocent misrepresentation in his complaint and did not request the opportunity to file an amended complaint. See MCR 2.116(I)(5).

In *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006), this Court delineated the following principles addressing fraud in the inducement:

---

[4] Although not raised in the statement of questions presented, plaintiff also noted that the supplement waived the right to a jury trial. However, even if we assumed, without deciding that the provision was illegal, the general rule is that illegal portions of a contractual agreement may be severed. *Stokes v Millen Roofing Co*, 466 Mich 660, 666; 649 NW2d 371 (2002); *AFSCME Mich Counsel 25 v City of Detroit*, 267 Mich App 255, 262; 704 NW2d 712 (2005). And in this case the supplement provided: "I agree that if any of the above terms is ever found to be legally unenforceable as written, such invalidity will not affect the validity of the rest of this agreement . . . ."

"[I]n general, actionable fraud must be predicated on a statement relating to a past or an existing fact." *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). However, "Michigan also recognizes fraud in the inducement . . . [which] occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Id.* To establish a fraud in the inducement, a party must show that

"(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." [*Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003); *M&D, Inc v McConkey*, 226 Mich App 801, 806; 573 NW2d 281 (1997).]

"Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Samuel D Begola Services, supra* at 640.

In his affidavit, plaintiff alleged that: "I believed and relied on the Office Manager's statement that the Application For Employment and Supplement I were paperwork that I had to sign for my employment, and proceeded to sign Supplement I." Plaintiff fails to apply the facts of his employment to the elements of fraud. Indeed, it is difficult to discern how the office manager committed fraud because the contention that the office manager told him to sign the agreement for his employment is consistent with the instructions on the supplement. That is, in order to obtain the employment, plaintiff had to agree to the terms. Plaintiff fails to identify a specific clear and convincing statement that the office manager made that induced him to sign the agreement. ("Fraud is not presumed but must be proven by clear, satisfactory, and convincing proof." *Youngs v Tuttle Hills Corp*, 373 Mich 145, 147; 128 NW2d 472 (1964).) Accordingly, the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel